**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| SAMUEL BOWDEN, | ) | No. CV 14-2682-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 15, 2014, seeking review of the Commissioner's denial of his application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on May 20, 2014, and May 27, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 1, 2015, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on March 5, 1961.  [Administrative Record ("AR") at 22.]  He has past relevant work experience as a warehouse worker and a casting operator.  [AR at 22, 60-61.]

On September 23, 2010, plaintiff filed an application for SSI payments, alleging that he has been unable to work since April 16, 2006.  [AR at 17, 234.]  After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 17, 187-89.]  A video hearing was held on October 17, 2012, at which time plaintiff appeared represented by an attorney, and testified on his own behalf.  [AR at 38-69.]  A vocational expert ("VE") also testified.  [AR at 58-68.]  On October 26, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from September 23, 2010, the date the application was filed.  [AR at 17-24.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 13.]  When the Appeals Council denied plaintiff's request for review on February 4, 2014 [AR at 2-7], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).  When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 23, 2010, the application date. [AR at 19.] At step two, the ALJ concluded that plaintiff has the severe impairments of chronic low back pain; degenerative disc disease of the lumbosacral spine with radiculopathy; and obesity. [AR at 20.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform light work as defined in 20 C.F.R. §

---

[1]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

416.967(b),[2] except as follows:

> [S]tanding/walking 4 hours in an eight-hour work day with the need of a cane for balancing, changing of positions every 30 minutes, no climbing of ladders/ropes, kneeling or crawling, occasional climbing of ramps/stairs, balancing and stooping, frequent crouching, occasional reaching overhead bilaterally and with avoidance of working at unprotected heights or around dangerous moving machinery.

[AR at 21.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as a warehouse worker or a casting operator.  [AR at 22, 60-62.]  At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are light occupational jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "marker"[3] (Dictionary of Occupational Titles ("DOT") No. 209.587-034), "parking lot cashier" (DOT No. 211.462-010), and "garment folder" (DOT No. 789.687-066).  [AR at 23, 62-63.]  Based on a hypothetical to the VE restricting the range of work to a limited sedentary position[4] [AR at 63], the ALJ found that plaintiff could alternatively perform such positions as "parking lot cashier" (DOT No. 211.462-010);[5] "call-out operator" (DOT No. 237.367-014); and "jewelry repairer" (DOT No. 700.687-062).  [AR at 23, 63-64.]

---

[2]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 416.967(b).

[3]    The decision describes this position as "market labeler," and transposed the DOT number testified to by the VE.  [Compare AR at 23 ("DOT # 290-587-034") with AR at 62 (DOT No. "209.587-034").]  A review of the DOT job number, as well as the testimony of the VE, shows that the VE described the position of "marker or . . . labeler," DOT No. 209.587-034.  [AR at 62.]

[4]    In his first hypothetical to the VE, the ALJ limited lifting to twenty pounds occasionally, and ten pounds frequently; in the second hypothetical, lifting was limited to ten pounds occasionally, and less than ten pounds frequently. [AR at 61-63.] Otherwise they contained identical limitations.

[5]    The VE testified that although considered light work, as commonly performed this position would still meet the hypothetical RFC for sedentary work.  [AR at 64.]

1    Accordingly, the ALJ determined that plaintiff was not disabled at any time from September

2    23, 2010, the date the application was filed.  [AR at 23.]

3

4                                              **V.**

5                                    **THE ALJ'S DECISION**

6    Plaintiff contends that the ALJ erred when he determined that plaintiff could perform the

7    alternative work activity of marker, parking lot cashier, and garment folder, in light of the RFC

8    limitation to no more than occasional overhead reaching with either upper extremity.  [JS at 5-6.]

9    As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision

10   of the ALJ.

11

12   **A.    DOT INCONSISTENCY**

13   The DOT raises a presumption as to job classification requirements.  See Johnson v.

14   Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); see also Pinto v. Massanari, 249 F.3d 840, 845-46

15   (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the [DOT].")

16   (citations omitted).  In order for "an ALJ to rely on a job description in the [DOT] that fails to comport

17   with a [plaintiff]'s noted limitations, the ALJ must definitively explain this deviation" and "the record

18   must contain persuasive evidence to support [it]."  Pinto, 249 F.3d at 846, 847 (citation and internal

19   quotation marks omitted).  Additionally, the Commissioner's Rulings unambiguously provide that

20   when a VE provides evidence about the requirements of a job or occupation, the adjudicator has

21   an affirmative responsibility to ask about any possible conflict between that VE evidence and the

22   information provided in the DOT.  Soc. Sec. Ruling ("SSR")[6] 00-4p.  SSR 00-4p further provides

23   that the adjudicator will ask the VE "if the evidence . . . she has provided" conflicts with information

24   _____

25       [6]   The Commissioner issues SSRs "to clarify the Act's implementing regulations and the
     agency's policies.  SSRs are binding on all components of the [Social Security Administration].
26   SSRs do not have the force of law.  However, because they represent the Commissioner's
     interpretation of the agency's regulations, we give them some deference.  We will not defer to
27   SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d
     1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).
28

1   provided in the DOT and obtain a reasonable explanation for any apparent conflict. <u>Id.</u>; <u>see</u> <u>also</u>

2   <u>Massachi</u>, 486 F.3d at 1152-53.

3

4   **B.**   **ANALYSIS**

5        Plaintiff contends that the ALJ's RFC determination would preclude him from performing

6   the "alternative work" suggested by the VE. [JS at 6-12.] Specifically, plaintiff contends that

7   based on the DOT requirements for each position, the occupations of marker, parking lot cashier,

8   and garment folder require frequent and/or constant "use of both upper extremities to reach

9   overhead." [JS at 6.] Plaintiff argues that each of these jobs, therefore, has requirements beyond

10  those of what he is capable of performing because of the RFC limitation to only *occasional*

11  overhead reaching bilaterally. [JS at 6-7.] He also contends that because neither the ALJ nor the

12  VE articulated reasons for deviating from the DOT job descriptions, the ALJ erred in finding that

13  plaintiff could perform these jobs. [JS at 8-12.] Plaintiff does not discuss the DOT requirements

14  for the alternative sedentary occupations of call-out operator and jewelry repairer which, based

15  on the VE's testimony, the ALJ found plaintiff could also perform. [<u>See</u> <u>generally</u> JS at 6-12; AR

16  at 23.]

17        Defendant contends that plaintiff "fails to appreciate the difference between the general

18  'reaching' and the specific [']reaching overhead.[']" [JS at 13.] Defendant argues that because

19  there is nothing in the DOT description of the jobs the ALJ found plaintiff could perform that would

20  indicate that the frequent or constant reaching requirement means that the reaching is always

21  *overhead* reaching, and because overhead reaching is a "subset" of reaching, there is no conflict

22  between the VE's testimony and the DOT. [JS at 12-15.] Defendant also specifically discusses

23  the descriptions for the sedentary job of jewelry repairer and the light/sedentary job of parking lot

24  cashier as providing evidence that the described tasks for those positions would not include a

25  significant amount of overhead reaching. [<u>Id.</u>] Like plaintiff, defendant does not discuss the DOT

26  requirements for the sedentary position of call-out operator.

27        Even if the Court assumes, without deciding, that the RFC limitation to occasional overhead

28  reaching bilaterally precludes plaintiff from being able to perform the occupations of marker,

parking lot cashier (light or sedentary), garment folder, and jewelry repairer, a review of all of the occupations the ALJ found plaintiff can perform shows that the sedentary position of "call-out operator" requires only *occasional* reaching.   DOT No. 237.367-014; see also 20 C.F.R. § 416.967(b) (if someone can do light work, the agency determines that he can also do sedentary work unless there are additional limiting factors -- not present here -- such as loss of fine dexterity or inability to sit for long periods of time).   Accordingly, even if the ALJ erred in finding that plaintiff was capable of performing all of the other occupations, any error was harmless because the call-out operator occupation -- with 1,400 positions locally (defined by the VE as the counties of Los Angeles, Orange, San Bernardino, and Riverside [AR at 68]), and 210,000 positions nationally [AR at 64][7] -- requires only *occasional* reaching, consistent with plaintiff's RFC limitation to *occasional* overhead reaching bilaterally.   Thus, plaintiff could perform this occupation even if all of the reaching for that position is overhead reaching bilaterally, which, based on the task description for that position,[8] is unlikely.

Accordingly, the Court finds that the VE's testimony that plaintiff could perform the call-out operator job did not conflict with the DOT, or with plaintiff's RFC limitation and, therefore, the ALJ

---

[7]    In Beltran v. Astrue, the court stated that where jobs are "'very rare' or generally unavailable to the claimant due to his limitations," an ALJ errs in finding that significant numbers of jobs exist. Beltran, 700 F.3d 386, 389 (9th Cir. 2010).  The Beltran court determined that 135 jobs in the region where the claimant lived did not constitute "significant numbers" of jobs.  Id. at 390 (citing Walker v. Matthews, 546 F.2d 814, 820 (9th Cir. 1976)).  The court also found that if 135 jobs in one of the largest regions in the nation (Los Angeles) is not significant, then 1,680 jobs distributed nationally "over *several* regions" "cannot be a 'significant number,' either."  Id.  If *either* the regional or national number is "significant," then the ALJ's decision will be upheld.  Id.  The Beltran court noted that it had previously found that 1,266 jobs regionally was a significant number; that 1,300 jobs in the Oregon region and 622,000 jobs in the national economy was significant; and that 2,300 jobs regionally and 64,000 nationally was significant.  Id. at 389 (citing Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1470 (9th Cir. 1989), Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002), Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995)).  Based on the foregoing, the Court finds that 1,400 call-out operator positions locally and 210,000 positions nationally constitute a significant number of available jobs.

[8]    A call-out operator "compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone.  Copies information onto form to update information for credit record on file, or for computer input.  Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber."  DOT No. 237.367-014.

8

did not err in relying on that testimony.  Remand is not warranted.

# VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that:  (1) plaintiff's request for reversal, or in the alternative, remand, is denied; and (2) the decision of the Commissioner is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  April  13 , 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE